IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



JERRY WELTY, JR.,

    Plaintiff,

v.                                                           Civil Action No. **3:16CV659**

**PETE MELETIS,** *et al.,*

    Defendants.

## MEMORANDUM OPINION

Jerry Welty, Jr., a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The matter is proceeding on Welty's Fourth Particularized Complaint ("Complaint," ECF No. 94) against Pete Meletis, George Hurlock, and Glendell Hill ("Defendants"). Meletis is the Superintendent of the Prince William Manassas Regional Adult Detention Center ("ADC"). (ECF No. 1, at 2.) Hurlock is the Director of Security at the ADC. (*Id.* at 3.) Hill is the Chairman of the Prince William-Manassas Jail Board. (*Id.* at 4.) The matter is before the Court on Defendants' Motion to Dismiss and the Court's obligation to review prisoner actions pursuant to 28 U.S.C. § 1915(e)(2). Welty has responded. For the reasons set forth below, the Motion to Dismiss (ECF No. 98) will be GRANTED IN PART and DENIED IN PART.

## I. STANDARD FOR MOTION TO DISMISS

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim

---

[1] Defendants contend that Welty has failed to allege facts, such as diversity of the parties, that would support diversity jurisdiction under 28 U.S.C. § 1332 and seek dismissal under Federal Rule of Civil Procedure 12(b)(1). It does not appear that Welty has sought to invoke this Court's diversity jurisdiction. Therefore, the Rule 12(b)(1) Motion warrants no further discussion.

on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates,* 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin,* 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely

2

"conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF PERTINENT ALLEGATIONS

### A. The Assault

On January 5, 2015, Welty was incarcerated in the ADC. (Compl. 1.) Welty was detained in the main jail of ADC ("MJ"), block 3I. (*Id.*)[2] At approximately 9:45 p.m., Welty was standing in the middle of the dayroom when he was assaulted by an unknown inmate or inmates. (*Id.*) The beating went on for roughly 45 minutes, until Welty's unconscious body was discovered by ADC staff. (*Id.*)

---

[2] The Court corrects the capitalization, spelling, and punctuation in the quotations from Welty's submissions.

3

Welty was awoken by ADC staff. (*Id.* at 2.) Welty was transported to a local hospital. (*Id.* at 3.) Welty required in excess of a dozen stitches and sustained deep bruising to his pubic area and penis. (*Id.* at 1–2.)

When he was returned to ADC, Welty was placed in cell 25. (*Id.* at 4.) "The two inmates that were in cell 25 were moved to 26. One of the inmates was Patterson, AKA Beast, a known Blood gang member. Patterson was in 3I at the time of the attack." (*Id.* at 4.) Sergeant Delany asked Welty if "any inmates tried to help him from the floor. Patterson was said to have a fresh wound with blood all over his hands. [Patterson] claimed they came from helping Welty up. Patterson was in jail for murder." (*Id.*)

### B. Security in the ADC Dayrooms

According to Welty:

> There was/is no reasonable security within MJ 3I ... i.e., no security cameras, intercoms, staff presence, staff does not enter dayrooms on security walks, only 3 (three) small observation windows (one 2' x 3' and two 2' x 2') whose size and positioning "hinder" visibility, dim lights in the dayroom(s) while hall lights are kept bright creating a mirror effect preventing staff vision, extreme architectural design flaws preventing visibility, inmates see staff coming long before being seen.

(*Id.* at 2.) Welty contends that because of the lack of monitoring in the dayrooms, inmates know they are "free to commit acts of violence" as "the only form of inmate monitoring is through 'listening.'" (*Id.*)

### C. Defendants' Knowledge Regarding the Security in the ADC Dayrooms

Welty contends that Defendants "Hurlock and Meletis have had 20 (twenty) plus years [of] prior knowledge" of the above conditions. (*Id.*) Welty contends that Defendant "Hill's knowledge has been for an unknown amount of years . . . ." (*Id.*)

### D. Allegations Pertaining to Grievances

Welty presents the following allegations regarding grievances that he filed after the assault:

4

> In July 2016, ADC Major Osborne and Defendant Hurlock visited Welty in protective custody concerning a large number of grievances he was filing and to discuss their nature. Each pertained to a specific part of the attack on Welty. After learning the information was going to be used for litigation they said they were all being voided and not to file anymore.
> . . . .
> For this Obsorne told Welty via memo that in order to file a grievance he must request permission to do so from Sgt. Fenner only by written request. Sgt. Fenner is then to view the grievance and decide whether to allow the grievance to be filed. This is gross abuse of policy which is located in the inmate handbook. This has been threatening and intimidating violating Due Process.

(*Id.* at 5.)

### III. WELTY'S CLAIMS FOR RELIEF

Claim 1     Defendants violated Welty's rights under the Fourteenth Amendment by creating an unsafe environment in the ADC dayroom that allowed Welty to be beaten for forty-five minutes. (Compl. 7.)

Claim 2     Defendants violated Welty's right to due process under the Fourteenth Amendment because they (a) "retaliated against, threatened and intimidated [Welty] for using the grievance system for gathering information for litigation," and (b) hindered the criminal investigation into the assault on Welty's person. (*Id.* at 7–8.)

Welty demands monetary damages and declaratory and injunctive relief.

### IV. PRELIMINARY MATTERS

Prior to addressing the substance of Claim 1, it is appropriate to dispense with some ancillary matters.

#### A. Moot Issues

As explained in the Memorandum Opinion and Order entered on June 19, 2018 (ECF Nos. 87, 88), as Welty is no longer incarcerated at the ADC, his demands for injunctive and declaratory relief are moot. Accordingly, Welty's demands for injunctive relief will be DISMISSED AS MOOT.

## B. Documents Attached to the Fourth Particularized Complaint

In moving to dismiss the Complaint, Defendants rely upon documents attached to the Complaint and documents they attached to the Motion to Dismiss. The "exhibit-prevails rule . . . provides that 'in the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails.'" *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (second alteration in original) (quoting *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)). Under this rule, "if a plaintiff 'attaches documents and *relies upon the documents to form the basis for a claim or part of a claim*, dismissal is appropriate if the document negates the claim." *Id.* (emphasis added) (quoting *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002)).

Nevertheless, as recently explained by the United States Court of Appeals for the Fourth Circuit:

> The "exhibit-prevails" rule is based on "the presumption that the plaintiff, by basing his [or her] claim on the attached document, has adopted as true the contents of that document." [*Goines*, 822 F.3d] at 167. However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Id.* "[I]n cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.* "The purpose for which the document is offered is particularly important where the document is one prepared by or for the defendant. Such unilateral documents may reflect the defendant's version of contested events or contain self-serving, exculpatory statements that are unlikely to have been adopted by the plaintiff." *Id.* at 168.

*Bell v. Landress*, 708 F. App'x 138, 138–39 (4th Cir. 2018) (third alteration in original). In *Bell*, the Fourth Circuit concluded that, in dismissing inmate Bell's complaint, the district court improperly relied upon a document attached to the complaint prepared by a prison official. *Id.* at 139.

6

In their Memorandum in Support of the Motion to Dismiss the Fourth Particularized Complaint, Defendants fail to adequately explain why the Court can consider any document outside of the Complaint. Given this deficiency, the Court's analysis will be limited to the factual allegations in the Fourth Particularized Complaint.

### C. Claims Not Addressed in the Motion to Dismiss

Defendants fail to articulate why Claims 2(a) and 2(b) should be dismissed. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017) (concluding that an inmate's "right to file a prison grievance free from retaliation [is] clearly established"), *cert. denied*, 138 S. Ct. 755 (2018). Nevertheless, in order to focus on those aspects of the action that are of central concern to Welty and the Court, the Court dispenses with those aspects of these claims that are clearly lacking in merit.

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Welty fails to mention Defendants Hill and Meletis in conjunction with the facts that support Claim 2(a). *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." (citing *Brzozowski v. Randall*, 281 F. Supp. 306, 312 (E.D. Pa. 1968))). Accordingly, Claim 2(a), as it pertains to Defendants Hill and Meletis, will be DISMISSED.

In Claim 2(b), Welty contends Defendants somehow violated his rights by interfering with his ability to pursue a criminal action against his assailant or assailants. Welty, as "a private citizen lacks a judicially cognizable interest in the [criminal] prosecution or nonprosecution of another."

7

*Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution."). Accordingly, Claim 2(b) will be DISMISSED.

## V. ANALYSIS

### A. Claim 1

According to Welty, he was a pretrial detainee at the time of the assault. (Compl. 1.) Therefore, Claim 1 is governed by the Fourteenth, rather than the Eighth Amendment. *See Westmoreland v. Brown*, 883 F. Supp. 67, 71 (E.D. Va. 1995) (citations omitted). Thus, Welty must allege facts that indicate he was unconstitutionally punished in violation of the Due Process Clause of the Fourteenth Amendment. *See Engel v. Francis*, No. 3:09CV585, 2010 WL 5300888, at *3 (E.D. Va. Dec. 20, 2010) (citations omitted). The relevant precedent teaches that "punishment, whether for a convicted inmate or a pretrial detainee, is the product of intentional action, or intentional inaction, respecting known and substantial risks of harm." *Westmoreland*, 883 F. Supp. at 72 (emphasis omitted) (citing *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994)). "The issue of constitutional import presented in this action is when the risk of harm becomes so substantial that 'deliberate indifference to it, . . . is the legal equivalent of inflicting 'punishment.'" *Id.* at 74.

In *Farmer*, the Supreme Court of the United States did not address "[a]t what point a risk of inmate assault becomes sufficiently substantial for [constitutional] purposes." 511 U.S. at 834 n.3. However, it is understood that, "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). Thus, "[a]ny time an individual is incarcerated, there is some risk that he may be a victim of violence at the hands of fellow inmates . . . ." *Westmoreland*, 883 F. Supp. at 74.

8

Accordingly, a baseline risk of assault inherent in prison life does not support a constitutional claim. *See Grieveson v. Anderson*, 538 F.3d 763, 776–77 (7th Cir. 2008).

Courts have found prison officials to be actually aware of a sufficiently substantial risk of assault "where custodians know of threats to specific prisoners posed by a specific source, or place prisoners in the same cell as an inmate known to have violent propensities." *Whaley v. Erickson*, 339 F. App'x 619, 622 (7th Cir. 2009) (citing *Brown v. Budz*, 398 F.3d 904, 914–15 (7th Cir. 2005)). Additionally, an inmate may satisfy the deliberate indifference standard by alleging facts that indicate "the risk of serious harm [is] . . . substantial even though the precise victim or assailant [is] not ascertainable." *Westmoreland*, 883 F. Supp. at 75.³ In this regard, a jailor cannot escape

> liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. . . . [I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or *because all prisoners in his situation face such a risk*.

*Farmer*, 511 U.S. at 843 (emphasis added) (citation omitted). Here, Welty contends that the lack of active monitoring combined with the structural defects of the dayroom is such that all prisoners in his situation faced a known substantial risk that an attack like the one upon his person would occur. *See Whitson v. Stone Cty. Jail*, 602 F.3d 920, 926–27 (8th Cir. 2010).⁴

---

³ For example, a constitutionally significant risk of assault exists if "rape was so common and uncontrolled that some potential victims dared not sleep [but] instead . . . would leave their beds and spend the night clinging to the bars nearest the guard station." *Westmoreland*, 883 F. Supp. at 75 (alteration and omission in original) (quoting *Farmer*, 511 U.S. at 843–44).

⁴ In *Whitson*, the plaintiff, a female inmate, was raped by a male inmate in the back of a prison van. The plaintiff claimed the defendant jail officials were deliberately indifferent to the substantial risk that such an attack would occur:

9

According to the Complaint, the dayrooms at the ADC are largely unmonitored by security staff.[5] Further, inmates in the dayrooms are able to avoid detection of any wrongdoing by security staff because the inmates can see the staff approaching through the three small windows before the staff can see into the dayroom. Thus, in this instance, one or more inmates were able to beat Welty for over a half an hour without any interference by security staff. Although thin, Welty has alleged sufficient facts to indicate that he "was 'incarcerated under conditions posing a substantial risk of serious harm.'" *Patterson v. Kelley*, 902 F.3d 845, 856 (8th Cir. 2018) (Grasz, J., concurring in part and dissenting in part) (quoting *Smith v. Ark. Dep't of Corr.*, 103 F.3d 637, 644 (8th Cir. 1996)); *see Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016) (observing that "the absence of frequent visual checks and the lack of audio monitoring clearly made the risk of serious harm to such [unmonitored] prisoners substantial"); *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (concluding that jail conditions which, *inter alia*, "fail to provide an ability

---

> She claims that this rape was foreseeable: two inmates of the opposite sex were isolated and placed next to each other in the back of a dark van; there was loud music; and the officers did not adequately observe, nor were they particularly concerned about, the nefarious goings-on in the second caged compartment, which was accessible only from the rear of the vehicle. Whitson alleges that by failing to provide adequate attention to security during transfers of this nature where male and female inmates are placed in a remote compartment where the safety, security and welfare of the female inmate were not and could not be adequately maintained, the defendants were deliberately indifferent to a risk of harm to her. This claim does not arise from Leach's attack per se, but arises from Whitson's "allegation that defendants were deliberately indifferent to a known substantial risk that such an attack would occur."

*Whitson v. Stone Cty. Jail*, 602 F.3d 920, 925 (8th Cir. 2010) (quoting *Krein v. Norris*, 309 F.3d 487, 491 (8th Cir. 2002)).

[5] Welty contends that the inmates in the dayrooms have "no fear of accountability as the only form of inmate monitoring is through 'listening.'" (Compl. 2.) Welty does not indicate that there are audio monitors in the dayroom. So, it appears that the security staff must overhear any disturbance from whatever remote location where they are located. Nevertheless, Welty notes that inmates "know that so long as they are quiet," they are "free to commit acts of violence." (*Id.*)

10

to lock down inmates, and fail to allow for surveillance of inmates pose a substantial risk of serious harm to inmates"); *Bradford v. City of Chicago*, No. 16 C 1663, 2017 WL 2080391, at *3 n.4 (N.D. Ill. May 15, 2017) ("[T]here does seem to be a reasonable degree of consensus that at a minimum, officers and others on duty in jails or lockups should have the ability to see or hear inmates and respond promptly to dangerous situations and calls for help." (citations omitted)). "Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' *Hudson v. Palmer*, [468 U.S. 517, 526 (1984)], having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (first and second alteration in original).

Furthermore, Welty has pled sufficient facts to indicate that Meletis and Hurlock were aware of and indifferent to the lack of monitoring in the dayrooms that posed a substantial risk of serious harm. Meletis is the Superintendent of ADC and Hurlock is the head of security. Both allegedly had worked at ADC for twenty years. Given the length of their employment and their security-oriented role at ADC, these allegations "suggest that [Meletis and Hurlock] had been exposed to information concerning the risk and thus must have known about it." *Id.* at 842 (internal quotation marks omitted). The same, however, cannot be said of Defendant Hill.

Defendant Hill was the Chairman of the Jail Board for the ADC. That fact alone does not support a reasonable inference that Hill would be aware of the specific circumstances regarding the monitoring of inmate activities in the dayroom. *See Myrick v. NaphCare, Inc.*, No. 3:16–CV–952–JAG, 2017 WL 3234383, at *3 (E.D. Va. July 31, 2017). Accordingly, the Motion to Dismiss Claim 1 with respect to Defendant Hill will be GRANTED.

## B. Qualified Immunity

Defendants assert that they are entitled to qualified immunity because, "Welty is claiming a right to not be assaulted in a jail. No such general protection or right exists as this risk exists almost anywhere. No court has ruled that inmates have such a right." (ECF No. 99, at 14.) This argument is incorrect. As the above precedent reflects, a pretrial detainee has a clearly established due process right to be protected from a substantial risk of an attack by other detainees. *See Castro*, 833 F.3d at 1067. That right is violated when a defendant official's deliberate indifference to such a risk permits an attack to occur. *Id.*; *see Toomer v. Willies*, No. JKS 12-83, 2015 WL 9259315, at *2 (D. Md. Dec. 18, 2015) (concluding that "qualified immunity would not apply because '[a] pretrial detainee's right to be free from a prison official's deliberate indifference to serious assaults by other inmates was clearly established as of the April 2010 attack'" (citation omitted)). Accordingly, Defendants are not entitled to qualified immunity at this time, but are not foreclosed from reraising the issue later in the litigation.

Defendants also have raised the issue of qualified immunity as a basis for staying all discovery and issuing a protective order.[6] (ECF No. 108.) Given the Court's ruling on the Motion to Dismiss, the Court will DENY Defendants' request for a protective order at this time. (ECF No. 108). Defendants have failed to suggest a legal and factual scenario under which their defense of qualified immunity would prevail. *Poole v. Gaston Cty.*, No. 315-CV-00309-FDW-DCK,

---

[6] Discovery is generally not appropriate when Defendants have raised a defense of qualified immunity. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (noting that "[u]ntil the threshold immunity question is resolved, discovery should not be allowed" (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))). This is because "[d]ecision of this purely legal question permits courts expeditiously to weed out suits which fail the [qualified immunity] test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suits on its merits." *Id.* As explained above, Defendants failed to demonstrate that as a purely legal matter they are entitled to qualified immunity at the pleading stage.

2016 WL 4267792, at *7 (W.D.N.C. Aug. 11, 2016) (concluding that "because the immunity defenses are so intertwined with the allegations of the case, the Court finds that normal discovery protocol will assist the Court and the Court will revisit immunity if reasserted at summary judgment"). Moreover, it appears any Motion for Summary Judgment will turn on evidentiary grounds (i.e. whether a violation of Welty's rights occurred), rather than on the purely legal "question of qualified immunity (i.e., whether the right(s) violated—*assuming* that violation(s) occurred—were clearly established)." *Delk v. Younce*, No. 7:14CV00643, 2016 WL 1298389, at *1 (W.D. Va. Mar. 31, 2016). Given the foregoing circumstances, Welty should be permitted to engage in normal discovery. *Id.* at *2 (noting that "[g]enerally, a court should not grant summary judgment when, as here, outstanding discovery requests on material issues exist" (alteration in original) (quoting *Raynor v. Pugh*, 817 F.3d 123, 130 n.5 (4th Cir. 2016))).

Welty has filed a "MOTION PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS" (ECF No. 100). The parties are reminded that discovery is to be conducted on an informal basis. No motion concerning discovery may be filed with the Court until the parties have made a good faith effort to resolve all legitimate discovery disputes. *See* E.D. Va. Loc. Civ. R. 37(E). The Court reminds Welty that discovery requests must be reasonable and relevant to the issues presently before the Court. Welty must also certify that a good faith effort has been made to resolve the discovery matter at issue by conferring with counsel for Defendants regarding the resolution of such matters. Fed. R. Civ. P. 37(a)(1). As Welty's Motion (ECF No. 100) fails to contain such a certification, it will be DENIED WITHOUT PREJUDICE. The parties are encouraged to cooperate in discovery and avoid unnecessary motions regarding discovery.

## VI. CONCLUSION

### A. The Remaining Claims

The Motion to Dismiss (ECF No. 98) will be GRANTED IN PART AND DENIED IN PART. Welty's claims for injunctive relief will be DISMISSED AS MOOT. Claim 1 will be DISMISSED with respect Defendant Hill. Claim 2(a) will be DISMISSED with respect to Defendants Hill and Meletis. Claim 2(b) will be DISMISSED. Defendants' request for a protective order (ECF No. 108) will be DENIED. Welty's discovery motion (ECF No. 100) will be DENIED WITHOUT PREJUDICE.

Thus, the following claims remain before the Court:

Claim 1     Defendants Hurlock and Meletis violated Welty's rights under the Fourteenth Amendment by creating an unsafe environment in the ADC dayroom that allowed Welty to be beaten for forty-five minutes.

Claim 2     (a) Defendant Hurlock "retaliated against, threatened and intimidated [Welty] for using the grievance system for gathering information for litigation." (Compl. 8.)

### B. Further Proceedings

Defendants shall file their answer within eleven (11) days of the date of entry hereof. Any party wishing to file a dispositive motion must do so within forty-five (45) days of the date of entry hereof. The matter will be set for trial before the undersigned on August 26, 2019.

An appropriate Order will accompany this Memorandum Opinion.

Date: 11 April 2019
Richmond, Virginia

/s/ John A. Gibney, Jr.
United States District Judge