IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JERRY WELTY, JR.,

    Plaintiff,

v.                                                                    Civil Action No. **3:16CV659**

**PETE MELETIS, *et al.*,**

    Defendants.

## MEMORANDUM OPINION

Jerry Welty, Jr., a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action. The matter is proceeding on Mr. Welty's Fourth Particularized Complaint ("Complaint," ECF No. 94) against Pete Meletis and George Hurlock.[1] Meletis is the Superintendent of the Prince William Manassas Regional Adult Detention Center ("ADC"). (ECF No. 1, at 2.) Hurlock is the Director of Security at the ADC. (*Id.* at 3.) The matter is before the Court on Defendants' Motion for Summary Judgment.

### I. MR. WELTY'S CLAIMS

The following claims remain before the Court:

Claim 1      Defendants Hurlock and Meletis violated Mr. Welty's rights under the Fourteenth Amendment by creating an unsafe environment in the ADC dayroom that allowed Mr. Welty to be beaten for forty-five minutes.

Claim 2      (a) Defendant Hurlock "retaliated against, threatened and intimidated [Mr. Welty] for using the grievance system for gathering information for litigation." (Compl. 8.)

---

[1] By Memorandum Opinion and Order entered on April 11, 2019, the Court dismissed all claims against Defendant Hill. (ECF Nos. 113, 114.)

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "*scintilla* of evidence" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of their Motion for Summary Judgment, Defendants submitted the following evidence: the police report Mr. Welty filed following the assault upon his person ("Police Report," ECF No. 128–1); the Unit Log Sheet from the day of the assault ("Unit Log," ECF No. 128–2); the affidavit of Jarrod Williams ("Williams Aff.," ECF No. 128–3); the affidavit of Everette Myers ("Myers Aff.," ECF No. 128–4); the affidavit of George Hurlock ("Hurlock Aff.," ECF No. 128–5); and, the affidavit of Roderick Osborne ("Osborne Aff.," ECF No. 128–6). Mr. Welty filed an unsworn response and also submitted some records from the ADC, correspondence with defense counsel, a drawing of the dayroom, and a barely legible medical record, and directed the Court to documents he attached to his Complaint.

The Court further notes that, at the bottom of his Complaint, Mr. Welty stated:

> I have read the foregoing and hereby verify that the matters alleged there in are true, except as to matters alleged on information and belief, and, as to those believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

(Compl. 10.) Such a statement fails to transform the statements in the Particularized Complaint into admissible evidence. *Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, at *2–3, *2 n. 5 (E.D.Va. June 1, 2011) (treating statements sworn to under penalty of perjury, but made upon information and belief as "mere pleading allegations" (quoting *Walker v. Tyler Cty. Comm'n*, 11 F. App'x. 270, 274 (4th Cir. 2001))).[2] Furthermore, by Memorandum Order entered

---

[2] Mr. Welty fails to distinguish in his Complaint which statements are made upon personal knowledge and which are made upon information and belief. The Court is neither obliged nor inclined to engage in the task of ascertaining which statements are made upon personal knowledge. Mr. Welty's statements in his Complaint conflict not only with Defendants' version of events, but what Mr. Welty previously told ADC officials and the police who investigated the assault. The Complaint "appears calculated to shade the case in his favor, but avoid the possibility of being held guilty for perjury." *Lewis v. Winfree*, No. 3:17CV69–HEH, 2018 WL 5848978, at *3 (E.D. Va. Nov. 8, 2018) (citing *Price v. Rochford*, 947 F.2d 829, 832 (7th Cir. 1991)), *aff'd*, No. 18–7509, 2019 WL 2499704 (4th Cir. June 17, 2019); *see Price*, 947 F.2d at 832 (refusing to consider documents which were verified in such a manner as to avoid the possibility of perjury).

on October 26, 2017, the Court informed Mr. Welty of the proper manner for submitting sworn evidence to oppose a motion for summary judgment:

> the Court will not consider as evidence in opposition to any motion for summary judgment a memorandum of law and facts that is sworn to under penalty of perjury. Rather, any verified allegations must be set forth in a separate document titled "Affidavit" or "Sworn Statement," and reflect that the sworn statements of fact are made on personal knowledge and that the affiant is competent to testify on the matter stated therein. *See* Fed. R. Civ. P. 56(c)(4).

(ECF No. 68, at 2.) In light of the foregoing principles and submissions, the facts set forth below in Part III are established for purposes of the Motion for Summary Judgment.

Before turning to the established facts, the Court notes that, in his Response to Defendants' Motion for Summary Judgment, Mr. Welty vaguely suggests that Defendants have failed to produce his medical records and other documents that would support his claim. (*See, e.g.*, ECF No. 130, at 7.) Generally, summary judgment is appropriate only "after adequate time for discovery." *Celotex Corp.*, 477 U.S. at 322. Thus, Fed. R. Civ. P. 56(d) provides that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" deny the motion for summary judgment or issue any other appropriate order. Fed. R. Civ. P. 56(d). "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56[d] in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988)). Thus, requests for relief under Rule 56(d) "should be denied . . . 'if the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" *Works v. Colvin*, 519 F. App'x 176, 182 (4th Cir. 2013) (quoting *Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006)).

In the first instance, it must be noted that Mr. Welty has not filed a 56(d) affidavit. *See Harrods Ltd.*, 302 F.3d at 244 (emphasizing the importance of the affidavit). Second, it must be noted that the Court has encouraged Mr. Welty to pursue discovery and has instructed him in the proper manner in which to pursue discovery. Finally, Mr. Welty fails to coherently explain how any of the information he sought would demonstrate Defendants acted with deliberate indifference to the risk that he would be assaulted. *See Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995) (denying relief under Rule 56(d) where plaintiff "did not specifically allege why the information sought would have been sufficient to create a genuine issue of material fact such that it would have defeated summary judgment"). Accordingly, no action will be taken on Mr. Welty's vague complaints that Defendants failed to produce some documents.

### III. PERTINENT UNDISPUTED FACTS

#### A. The Assault

On January 5, 2015, Mr. Welty was incarcerated in the ADC in Unit 13. (Williams Aff. ¶¶ 2, 8.) Jarrod Williams was the Post Officer for Unit 13 on that night. (*Id.* ¶ 2.) As Post Officer, Williams conducts security walks through the unit at least twice an hour. (*Id.* ¶ 3.) "On January 5, 2015, at 2140, inmate Gould was taken off the unit and sent to medical." (*Id.* ¶ 4.) Gould's cell block was adjacent to Mr. Welty's cell block. (*Id.* ¶ 5.) When "Gould was escorted to medical there was no indication of a fight in Mr. Welty's cell block nor was Mr. Welty incapacitated." (*Id.* ¶ 6.) Twenty minutes later, at 2200, while conducting a security walk, Williams heard sounds consistent with a fight coming from Mr. Welty's cell block. (*Id.* ¶ 7.) Williams immediately ran to investigate. (*Id.*)

Upon arriving in Mr. Welty's cell block, Williams "found Mr. Welty standing in the dayroom with some blood on his head. [Williams] first observed Mr. Welty through a dayroom

5

window before [he] got to the door. At no time was Mr. Welty unconscious or lying on the floor. At no time was there any blood on the floor or in the cell block. The only blood was on Mr. Welty's shirt." (*Id.* ¶ 8.)[3] Williams "locked down the unit, requested the Red Team, and waited at the door." (*Id.* ¶ 9.) Williams asked Mr. Welty what happened, and "Mr. Welty kept repeating that he fell." (*Id.* ¶ 10.) "Before the incident, Mr. Welty gave no indication to [Williams] of any hostility with his cell block mates or that he was concerned for his safety." (*Id.* ¶ 11.)

Everette Myers was a member of the Red Team that responded to Mr. Welty's unit on January 5, 2015. (Myers Aff. ¶ 2.) "Because Sgt. Williams suspected a fight, [Myers] inspected the hands of all inmates in Mr. Welty's cell block for bruises." (*Id.* ¶ 4.) Williams found "bruising and cuts on inmate Patterson's hands consistent with a fight." (*Id.* ¶ 5.) "Despite Mr. Welty insisting he fell, [Myers] removed inmate Patterson from Mr. Welty's cell to keep both inmates safe." (*Id.* ¶ 6.) Mr. Welty and inmate Patterson were never housed together again. (*Id.* ¶ 12.) Although Mr. Welty later claimed he was assaulted by inmate Means, Myers inspected inmate Means and did not find any cuts or bruises on the hands of inmate Means. (*Id.* ¶ 7.)

Myers rode in the ambulance with Mr. Welty to the hospital. (*Id.* ¶ 9.) During that ride, Mr. Welty continued to insist that his injuries were the result of a fall. (*Id.*)

On January 16, 2015, Mr. Welty decided to press charges against inmate Means. (Police Report.) According to Mr. Welty:

> On 1/5/15, at approximately 2200 hours, Mr. Welty was in a common area within the jail watching television. While watching television, Mr. Welty observed Mr. Alfred Means approach and change the channel on the television. As to not be perceived as 'a bitch,' Mr. Welty addressed Mr. Means and questioned why he changed the channel. The two got into a heated argument. Mr. Welty advised that Mr. Means struck him in the head causing him to go unconscious.

---

[3] Welty's drawing of the dayroom reflects that there are two windows from which ADC personnel can observe the dayroom on his unit. (ECF No. 130–1, at 8 (as paginated by CM/ECF).)

(*Id.*)[4]

### B. Dispute Regarding the Filing of Grievances

In July of 2016, "Mr. Welty was submitting numerous grievances about responses to his previous grievances that he had not yet received." (Osborne Aff. ¶ 3.) Major Osborne met with "Mr. Welty to discuss the consecutive and redundant grievances he was filing." (*Id.* ¶ 2.) Mr. Welty acknowledged that he "was grieving redundant issues before getting a response and was merely building his paper trail for an impending lawsuit." (*Id.* ¶ 4.) Major Osborne "advised Mr. Welty that if he continued to abuse the grievance procedure, or not wait for a response before submitting a rebuttal, that he would be required to submit a request for a grievance form and the issue would be reviewed before he would get the form." (*Id.* ¶ 5.) "Mr. Welty continued his abuse of the grievance system," so Major Osborne served Mr. Welty with a memo advising him that the protocol Major Osborne previously explained to him would be implemented. (*Id.* ¶ 6.) Mr. Welty always had access to the grievance system and was not retaliated against for filing grievances. (*Id.* ¶¶ 7–10.) Captain Hurlock never spoke with Mr. Welty about his grievance issue. (Hurlock Aff. ¶ 2.)

### IV. ANALYSIS

#### A. Claim 1

Because Mr. Welty was a pretrial detainee at the time of the assault, Claim 1 is governed by the Fourteenth Amendment, rather than the Eighth Amendment. *See Westmoreland v. Brown*, 883 F. Supp. 67, 71 (E.D. Va. 1995) (citations omitted). Thus, Mr. Welty must allege facts that indicate he was unconstitutionally punished in violation of the Due Process Clause of the Fourteenth Amendment. *See Engel v. Francis*, No. 3:09CV585, 2010 WL 5300888, at *3 (E.D.

---

[4] In the Police Report, Mr. Welty's name is redacted in all but one instance.

Va. Dec. 20, 2010) (citations omitted). The relevant precedent teaches that "punishment, whether for a convicted inmate or a pretrial detainee, is the product of intentional action, or intentional inaction, respecting known and substantial risks of harm." *Westmoreland*, 883 F. Supp. at 72 (emphasis omitted) (citing *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994)). "The issue of constitutional import presented in this action is when the risk of harm becomes so substantial that 'deliberate indifference' to it, . . . is the legal equivalent of inflicting 'punishment.'" *Id.* at 74.

In *Farmer v. Brennan*, the Supreme Court of the United States did not address "[a]t what point a risk of inmate assault becomes sufficiently substantial for [constitutional] purposes." 511 U.S. at 834 n.3. But "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). Thus, "[a]ny time an individual is incarcerated, there is some risk that he may be a victim of violence at the hands of fellow inmates . . . ." *Westmoreland*, 883 F. Supp. at 74. Accordingly, a baseline risk of assault inherent in prison life does not support a constitutional claim. *See Grieveson v. Anderson*, 538 F.3d 763, 776–77 (7th Cir. 2008).

Courts have found prison officials to be actually aware of a sufficiently substantial risk of assault "where custodians know of threats to specific prisoners posed by a specific source, or place prisoners in the same cell as an inmate known to have violent propensities." *Whaley v. Erickson*, 339 F. App'x 619, 622 (7th Cir. 2009) (citing *Brown v. Budz*, 398 F.3d 904, 914–15 (7th Cir. 2005)). Additionally, an inmate may satisfy the deliberate indifference standard by introducing evidence that indicates "the risk of serious harm [is] . . . substantial even though the precise victim or assailant [is] not ascertainable." *Westmoreland*, 883 F. Supp. at 75.[5] In this regard, a jailor cannot escape

---

[5] For example, a constitutionally significant risk of assault exists if "rape was so common and uncontrolled that some potential victims dared not sleep [but] instead . . . would leave their

> liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. . . . [I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or *because all prisoners in his situation face such a risk.*

*Farmer*, 511 U.S. at 843 (emphasis added) (citation omitted).

A risk of assault may be sufficiently substantial as to require action by prison officials where it is "'highly probable'" that a particular attack will occur, or in instances where a particular inmate "pose[s] a 'heightened risk of assault to the plaintiff.'" *Brown*, 398 F.3d at 911; *see, e.g., Purvis v. Johnson*, 78 F. App'x 377, 379 (5th Cir. 2003) (concluding that plaintiff's allegations that he informed officials four times that his cell-mate was a racist and threatened him every day because he was white, sufficiently stated a claim for failure to protect). Negligence or inadvertence does not suffice; rather, "[i]n order to infer callous indifference when an official fails to protect a prisoner from the risk of attack, there must be a strong likelihood rather than a mere possibility that violence will occur." *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006) (alteration in original) (internal quotation marks omitted) (citation omitted).

Here, Mr. Welty *alleged* that the lack of active monitoring combined with the structural defects of the dayroom is such that all prisoners in his situation faced a known substantial risk that an attack like the one upon his person would occur. *See Whitson v. Stone Cty. Jail*, 602 F.3d 920, 926–27 (8th Cir. 2010). Mr. Welty, however, failed to support this allegation with actual evidence. The evidence before the Court reflects that staff regularly monitor the dayrooms at the ADC. In the present case, that active monitoring allowed staff to respond to the altercation involving Mr.

---

beds and spend the night clinging to the bars nearest the guard station." *Westmoreland*, 883 F. Supp. at 75 (alteration and omission in original) (quoting *Farmer*, 511 U.S. at 843–44).

9

Welty shortly after it started. Mr. Welty fails to direct the Court to any other instance during his stay at ADC where he observed that inmates were able to assault other inmates with impunity. Mr. Welty has failed to introduce evidence that demonstrates either Defendants Meletis or Hurlock acted with deliberate indifference to a substantial risk that Mr. Welty would be assaulted in the dayroom at ADC. Accordingly, Claim 1 will be DISMISSED.

**B. Claim 2(a)**

It is settled that "an inmate possesses a First Amendment right to be free from retaliation for filing a grievance." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 542 (4th Cir. 2017) (quoting *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)), *cert. denied*, 138 S. Ct. 755 (2018), *and cert. denied*, 138 S. Ct. 755 (2018). Nevertheless, "an inmate does not have a due process 'liberty interest in access to [a grievance] procedure.'" *Id.* (alteration in original) (quoting *Flick*, 932 F.2d at 729).

In order for his retaliation claim to survive summary judgment, Mr. Welty is required to produce sufficient evidence for a reasonable juror to conclude "that (1) [he] engaged in protected First Amendment activity, (2) [Defendant Hurlock] took some action that adversely affected [Mr. Welty's] First Amendment rights, and (3) there was a causal relationship between [Mr. Welty's] protected activity and [Defendant Hurlock's] conduct." *Booker v. S.C. Dep't of Corr.*, 583 F. App'x 43, 44 (4th Cir. 2014) (first alteration in original) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)).

As noted above, Mr. Welty satisfies the first element because the filing of a grievance is protected First Amendment activity. *Booker*, 855 F.3d at 542 (quoting *Flick*, 932 F.2d at 729). Nevertheless, Mr. Welty fails to satisfy the second and third elements as there is no evidence that Defendant Hurlock took any action against Mr. Welty for filing grievances. Further, as explained

below, Mr. Welty fails to demonstrate that Major Osborne's restrictions on Mr. Welty's filing of abusive grievances amount to unconstitutional retaliation.

With respect to the second element, Mr. Welty was required to "show that [the prison official's] conduct resulted in something more than a de minimis inconvenience to [Mr. Welty's] exercise of First Amendment rights." *Booker*, 583 F. App'x at 44 (quoting *Constantine*, 411 F.3d at 500). In this regard, the Court is required to evaluate whether the prison official's actions "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* (quoting *Constantine*, 411 F.3d at 500). "This objective inquiry examines the specific facts of each case, taking into account the actors involved and their relationship." *Id.* (citing *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006)).

Here, in response to Mr. Welty's filing of abusive, redundant grievances, Mr. Welty was required to submit a request for a grievance form and that request would be reviewed prior to ADC officials issuing Mr. Welty a grievance form. Such a minor restriction on an inmate's access to the grievance procedure amounts to a de minimis inconvenience and cannot support a retaliation claim. *See Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. 2001) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). Accordingly, Claim 2(a) will be DISMISSED.

## V. CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 127) will be GRANTED. Mr. Welty's claims will be DISMISSED. Mr. Welty's Motion to Reinstate Prayer for Injunctive Relief (ECF No. 117) will be DENIED. The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

Date: 27 June 2019
Richmond, Virginia

/s/ 
John A. Gibney, Jr.
United States District Judge

11